**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramon De Leon Carlos,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-05521-PHX-DMF<br><br><br><br>**ORDER** |

At issue is the denial of Plaintiff Ramon De Leon Carlos' applications for a period of Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1.) After reviewing the Plaintiff's Brief (Doc. 20, Pl. Br.), Defendant's Response (Doc. 21, Def. Br.), Plaintiff's Reply (Doc. 24, Reply), and the administrative record (Doc. 14, R.), the Court affirms the decision.

**I.  BACKGROUND[1]**

On December 29, 2015, Plaintiff filed his Title II application for a period of disability and disability insurance benefits ("DIB"). (R. at 15.) On August 25, 2016, Plaintiff filed his Title XVI application for supplemental security income ("SSI"). (*Id.*) Plaintiff's application was denied initially on April 5, 2016, and again upon reconsideration on October 14, 2016. (*Id.*) On June 28, 2018, Plaintiff appeared at a hearing before an administrative law judge ("ALJ"). (*Id.*) The ALJ considered whether Plaintiff has been

---

[1] In lieu of providing a detailed summary of the entire medical record here, the Court will reference and incorporate certain evidence as appropriate in its analysis.

disabled since December 22, 2015, the alleged beginning date of disability. (*Id.*) The ALJ issued a written decision finding Plaintiff not disabled. (R. at 15-27.) On August 29, 2019, the Appeals Council denied review, making the decision final and ripe for this Court's review.[2] (R. at 1-3.)

The ALJ found Plaintiff had "severe"[3] impairments of hypertension, degenerative disc disease, obesity, status post transient ischemic attack (TIA), coronary artery disease, status post stenting, thyroid disorder, and lumbar spondylosis. (R. at 18.) The ALJ additionally found Plaintiff has non-severe hyperlipidemia, headaches, impacted cerumen of the left ear, carpal tunnel syndrome (CTS), and an abnormal serus protein electrophosphoris. (R. at 19.) The ALJ considered Plaintiff's alleged obstructive sleep apnea and stroke syndrome as non-medically determinable impairments. (*Id.*)

The ALJ evaluated the medical evidence testimony and ultimately concluded that Plaintiff had not been disabled from December 22, 2015. (R. at 27.) The ALJ calculated Plaintiff's residual functional capacity[4] ("RFC") and found that he can perform "light work"[5] with certain limitations. (R. at 20.) Specifically, Plaintiff can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, crouch and crawl; but he should not be exposed to hazards such as moving machinery and unprotected heights. (*Id.*) The ALJ considered the testimony of the vocational expert and found Plaintiff capable of performing past relevant work as a sorter or a server. (R. at 25.) Additionally, based on his age, education, work experience, and

---

[2] This Court may review the Commissioner's disability determinations under 42 U.S.C. § 405(g): "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

[3] An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[4] "[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . it requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

RFC, the ALJ found Plaintiff capable of performing other jobs that existed in significant numbers in the national economy. (R. at 26.)

## II. LEGAL STANDARDS

To determine whether a claimant is disabled under the Act, the ALJ follows a five-step analysis. 20 C.F.R. § 404.1520(a); *see also Popa v. Berryhill*, 872 F.3d 901, 905-06 (9th Cir. 2017). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). At step one, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled and the inquiry ends; if not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the Commissioner has shown that claimant can perform any other work in the national economy based on the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(a)(4)(v). The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines set forth in Appendix 2 to Subpart P of 20 C.F.R. Part 404. If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or if it is based on legal

error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance—it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

To determine whether substantial evidence supports a decision, the Court must "consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III.    ANALYSIS

Plaintiff argues that the ALJ erred in evaluating his claim by: (1) improperly rejecting Plaintiff's symptom testimony and (2) misevaluating the medical opinions in the record. (Pl. Br. at 1, 13-14, 20.) The Court now addresses each argument in turn.

**A.    The ALJ Did Not Err in Rejecting Plaintiff's Symptom Testimony.**

Plaintiff argues that the ALJ committed material error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole. (Pl. Br. 13-14.) Plaintiff alleges that while the ALJ summarized the medical evidence in the record, the ALJ did not explain how her interpretation of the evidence discounted particular symptom testimony. (Pl. Br. at 15.)

Plaintiff testified that he has back pain, which presents more on the left side than on the right; cramps and numbing in his left leg; uncontrolled blood pressure; arthritis; and constant muscle spasms. (R. at 20.) He reported taking blood thinner medication, pain medication, and receiving injections in his back. (*Id.*) He stated that he stopped working due to a TIA in December 2015. (*Id.*) He testified that he is not able to stand or walk far; can lift up to 20-30 pounds at one time; and can sit and watch television for a half hour

before needing to stand. (*Id.*) He naps for 2-3 hours per day; helps some around the house; does not drive because he fainted a month before the hearing; and grocery shops with his wife using the electric cart. (*Id.*)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); 20 C.F.R. § 404.1529(c). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, the ALJ must then evaluate the statements in context of the (1) objective medical evidence and (2) other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)-(3). The ALJ may consider many factors, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so," *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996), and not "merely because they are unsupported by objective medical evidence," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This requirement is meant to prevent an ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony. *See Thomas*, 278 F.3d at 958. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Id.* at 959.

Here, the ALJ found the first step threshold met, stating that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 21.) In evaluating the second step, however, the ALJ found that "the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." (*Id.*)

Defendant concedes that the ALJ based her decision to discount Plaintiff's subjective pain testimony in part on the objective medical record. (D. Br. at 4-5.) Defendant goes on to argue that the ALJ provided other specific reasons supported by substantial evidence in the medical record for discounting Plaintiff's testimony. (D. Br. at 6-7.) Specifically, the ALJ pointed to inconsistencies between Plaintiff's testimony, the objective medical evidence, and the longitudinal record, including: (1) Plaintiff's current conservative treatment for pain, including prescribed exercise, aqua therapy, lumbar injections, and medication, in addition to a cardiac catheterization (R. at 23, 350, 429); reported improvement and stabilizing of Plaintiff's condition (R. at 22-23); Plaintiff's daily activities, including helping take care of the house, his children, grocery shopping, and exercising (R. at 240-42, 460); and unremarkable objective cardiovascular, neurological, and physiological findings, including no known history of a stroke despite Plaintiff's conflicting testimony (R. at 21-23, 318-19, 461, 464, 741, 1056, 1058-59, 1082, 1096).

All such evidence was appropriately considered by the ALJ. *See Javalera v. Saul*, 806 Fed. Appx. 516, 518 (9th Cir. 2020) (the ALJ appropriately discounted pain testimony where the medical record showed "unremarkable findings such as improved range of motion, normal shoulder strength, and normal sensory and motor functioning that did not substantiate [plaintiff's] claims of disabling neck and shoulder problems"); *Molina*, 674 F.3d at 1113; *Tommasetti*, 533 F.3d at 1039 (the ALJ permissibly "inferred that [plaintiff's] pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

In sum, the ALJ did not err in discounting Plaintiff's testimony. The ALJ provided specific and legally supported reasons for discounting Plaintiff's subjective pain testimony and cited substantial evidence in the record in support. The ALJ also found Plaintiff's

testimony to be unsupported by the medical record. "Credibility determinations are the province of the ALJ. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the court's] role is not to second-guess that decision." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted). There is no reversible error.

### B. The ALJ Did Not Err in Weighing the Medical Opinions.

Plaintiff argues that the ALJ committed materially harmful error by rejecting the opinions of treating physician Ali A. Askari, M.D., nurse practitioner Susan Sarabia, FNP-C, and treating physician Quirino B. Valeros, M.D. (Pl. Br. at 23.) The Commissioner responds that the ALJ appropriately evaluated the medical source opinion evidence in determining Plaintiff's RFC. (D. Br. at 9.)

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence. 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. §§ 404.1513(a)(2), 404.1527. This includes "acceptable medical sources" like physicians, as well as "other" evidence. *See* 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(3). The ALJ is required to evaluate and weigh every medical opinion in the record. 20 C.F.R. § 404.1527(c). The relationship between the medical opinion source and the claimant provides a starting point in deciding how to weigh that source's opinion about the claimant. Generally, the views of doctors who have treated the claimant get top priority. *Garrison*, 759 F.3d at 1012. Opinions of doctors who have examined but not treated the claimant are next in rank. *Id.* Those doctors who have neither treated nor examined the claimant generally get the least consideration. *Id.* An ALJ is not required to accept the opinion of any physician if it is brief, conclusory, and inadequately supported by clinical evidence. *Thomas*, 278 F.3d at 957.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation omitted). An

ALJ may do this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* To discount "other medical sources," like that of an independent nurse practitioner, the ALJ needs only to give a germane reason for doing so. *Molina*, 674 F.3d at 1111; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

### 1. Opinion of Dr. Askari.

Plaintiff points to the ALJ's incorrect reference to Dr. Askari as Dr. Askan as proof that "the ALJ's evaluation of the medical opinion evidence is [*sic*] Carlos's claim was careless." (Pl. Br. at 22.) Yet, Plaintiff's lawyer himself made the same mistake multiple times in Plaintiff's opening brief. (*See, e.g.*, Pl. Br. at 11.) This argument lacks merit. The ALJ appropriately discounted Dr. Askari's opinion based upon the ALJ's evaluation of the medical record as a whole. A physician opinion, even that of a treating physician, may be discounted or rejected if it is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; 20 C.F.R. § 404.1527(c)(3); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ provided specific and legitimate reasons, supported by evidence in the medical record, for discounting Dr. Askari's opinion—namely, discrepancies in Plaintiff's reported symptoms; lack of supporting examinations, diagnostic or clinical imagining; or an explanation for Dr. Askari's opined limitations or any indication that the limitations or symptoms would last for a continuous period of at least 12 months.[6] (R. at 443-44, 644, 699, 1056-59.) There is no reversible error.

### 2. Opinion of NP Sarabia.

"[A] nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not." *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *see also Molina*, 674 F.3d at 1111 n.3. Although NP Sarabia's assessment forms were signed by Jack Hawks, D.O., Plaintiff concedes that the record does not show that Dr. Hawks acted as a "supervising physician"

---

[6] *See* 20 C.F.R. § 404.1509.

to NP Sarabia and that the report is "considered to be NP Sarabia's opinion." (Pl. Br. at 11 n.9.) NP Sarabia's opinion is thus considered to be from an "other" medical source. *See* 20 C.F.R. §§ 404.1513.

Plaintiff argues that the ALJ's assessment of NP Sarabia's June 2018 narrative statement (R. at 1141-42) was insufficient. The Court disagrees. It was not error for the ALJ to discount NP Sarabia's opinion based on inconsistences with the objective medical record, including an uncorroborated diagnosis of a CVA (R. at 24, 373) and generally conservative treatment for Plaintiff's pain and symptoms. *See Bayliss*, 427 F.3d at 1218 (citing *Lewis*, 236 F.3d at 511). Plaintiff does not explain how NP Sarabia's finding of "ongoing cardiac symptoms, including chest pain and fatigue, and persistent back pain that was not permanently or completely relieved by aquatic therapy, injections, or pain medications" (Pl. Br. at 25) necessarily invalidates the ALJ's finding that "the claimant has work related restrictions, but it does not prevent all work." (R. at 24.) The Plaintiff additionally argues that the ALJ erred by failing to evaluate NP Sarabia's April 2018 statement of Plaintiff's work capacities. (Pl. Br. 25.) The Court agrees that this was error but finds the error harmless—the two opinions (R. at 495-96, 1141-42) are duplicative. *See Elam v. Comm'r of Soc. Sec. Admin.*, No. CV.-19-04773-PHX-ESW, 2020 WL 2611207, *8 (D. Ariz. May 22, 2020). The ALJ provided germane reasons for discounting NP Sarabia's opinion in her finding of Plaintiff's RFC. There is no reversible error.

### 3.     Opinion of Dr. Valeros.

The ALJ assigned "some weight" to Dr. Valeros' opinion. (R. at 24.) Plaintiff concedes that "Dr. Valeros's assessments neither help nor hurt Plaintiff's claim for benefits, since Dr. Valeros provided assessments that [Plaintiff both] could not and could perform sedentary work within a short period of time." (Pl. Br. at 20-21.) Plaintiff argues, however, that it was material error for the ALJ to have considered Dr. Valeros' June 2017 opinion (R. at 23, 441-42, 445-47), which found that Plaintiff could perform a range of sedentary work, but not Dr. Valeros' earlier May 2017 opinion (R. at 278-85), which included greater restrictions. The Court finds that while that even if that was error, it was

harmless error.  *See Tommasetti*, 533 F.3d at 1038.  The Court also agrees with Defendant that "[t]he fact that Dr. Valero changed his opinion less than two months later, if anything, only undermines an opinion of more restrictions and renders it of little probative value." (D. Br. at 11 n.7.)  Internal inconsistencies in a medical provider's assessments or treatment notes can be a factor in discounting or rejecting a medical opinion in the RFC calculation. *See, e.g.*, *Bayliss*, 427. F3d at 1216.  There is no reversible error.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the November 9, 2018 decision of the Administrative Law Judge (R. at 15-27), as upheld by the Appeals Council (R. at 1-6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of November, 2020.

_____
Honorable Deborah M. Fine
United States Magistrate Judge